UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY STEWART ANDRADES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MANTECA POLICE, et al.,<br><br>Defendants. | No. 2:23-cv-01905 TLN AC (PS)<br><br>ORDER and FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). The case was removed from state court by defendants on September 5, 2023. ECF No. 1. Plaintiff moves to remand the action to state court. ECF No. 4. Defendants filed an answer on October 16, 2023. ECF No. 5. On October 17, 2023, defendants moved for judgment on the pleadings. ECF No. 7. On November 12, 2023, plaintiff moved to strike defendants' answer. ECF No. 12. The three referenced motions were heard in open court before the undersigned on January 10, 2024, with plaintiff present and attorney Graham Scott appearing on behalf of the defendants. ECF No. 16.

### I. Background

Anthony Stewart Andrades filed a pro se complaint in the Superior Court of California, County of San Joaquin, on July 17, 2023 against the City of Manteca Police Department, Officer Brandon Lowry, Officer Raul Hernandez, Officer Timothy Medina, and Officer Devin Brooks.

1

ECF No. 1 at 6. The complaint alleges that on May 18, 2022, plaintiff was a passenger in a vehicle driven by his girlfriend, who was the arranged sober driver. ECF No. 1 at 8. During their drive, plaintiff's girlfriend accelerated, and plaintiff's coffee fell from the dashboard on to plaintiff's clothes. Id. Plaintiff removed his shirt and pants and placed them in the back of the truck, re-entering the car in the rear passenger seat because the front seat was saturated with coffee. Id. Plaintiff remained in the back seat while in the Taco Bell drive through and while they ate in the parking lot. Id. They drove again, and plaintiff fell asleep in the car. Id. He later awoke and opened the rear passenger door, and realized his girlfriend had made a pit stop. Id. He fell asleep again and was woken up by the sound of a door closing and commands given by defendant Officer Raul Hernandez. Id. Officer Hernandez stated that plaintiff was under arrest and told plaintiff to exit the vehicle with his hands up and lay face down. Id.

Plaintiff attaches two police reports to his complaint. ECF No. 1 at 15-20 (Plaintiff's Exhibit A); id. at 21-23 (Plaintiff's Exhibit B). Because they are attached to the complaint, these reports are incorporated therein and are considered part of the pleading. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). As with the rest of the complaint, the court accordingly assumes the contents of these documents to be true for the purposes of a motion to dismiss, see id., with the exception of those portions that plaintiff alleges are false.

The reports state that at 22:51 hours on May 18, 2022, a person named John Vigallon called 911 to report a yellow Dodge Ram repeatedly slamming on the brakes on the street in front of Mr. Vigallon's home. ECF No. 1 at 18, 22. Mr. Vigallon reported that the truck would suddenly accelerate and then slam on the breaks and screech to a halt. Id. Mr. Vigallon reported seeing a male driver exit the truck and strip off his clothes; the driver then challenged Mr. Vigallon to a fight. Id. At that point, Mr. Vigallon called 911 and attempted to pursue the truck until City police officers located the vehicle. Id.

According to Officer Lowry's report, Officer Hernandez located the vehicle and he and Officer Brooks responded to Officer Hernandez's location. Id. at 18. Officer Lowry noted vehicle was parked "crooked on the right shoulder of the road and stopped upon the sidewalk. There was a distinct and fresh tire skid mark line on the roadway that led up to the front driver's

side tire . . ." and the tire skid mark was at least twenty feet long. Id. The officers saw plaintiff dressed only in his underwear lying on the back seat. Id. When asked by Officer Lowry, plaintiff did not know how he got to the location but admitted he had been drinking alcohol. Id. Plaintiff eventually got out of the back seat of the truck, laid down on the ground, and was handcuffed by Lowry. Id.

When Officer Lowry walked plaintiff back to his vehicle, he noted a heavy odor of alcohol on plaintiff's breath and that plaintiff's gate was unsteady and his eyes were red and watery. Id. When asked his name, plaintiff responded "I don't know, I'm drunk." Id. Plaintiff also stated "I need help, obviously" but refused to perform any field sobriety tests and asked to be taken to jail. Id. Officer Hernandez contacted Mr. Vigallon to obtain his statement and see if Mr. Vigallon could identify plaintiff in a lineup. Id. at 22. Officer Hernandez drove to Mr. Vigallon's location and read him a "Simmons admonishment," telling him to identify the driver only if he was 100 percent certain it was the person he saw. Id. Mr. Vigallon was placed in Officer Hernandez' vehicle and driven to where plaintiff was with Officer Lowry. Id. Mr. Vigallon stated he was 100 percent certain that plaintiff was the person he saw driving in the front of his house in the yellow truck, and was the same person he had reported to the authorities. Id. Mr. Vigallon also remarked that plaintiff was wearing the same underwear that he saw on the driver earlier. Id.

Following the positive identification, Officer Lowry placed plaintiff under arrest for a violation of California Vehicle Code §23152(a), for operating a vehicle under the influence. ECF No. 1 at 19. Plaintiff was asked if he would consent to either a blood or breath sample; each time his answer was "alright." Id. Because of his refusal to clearly answer the question, Officer Lowry obtained a warrant to have plaintiff's blood drawn. Id. When officer Lowry brought the signed warrant for a forced blood draw to the hospital where plaintiff was detained, he saw that plaintiff had been restrained on a gurney due to his "violent and erratic" behavior. Id.

Following a trial by jury, plaintiff was found not guilty of driving under the influence on January 26, 2023. ECF No. 1 at 11.

Plaintiff alleges that Officer Lowry's report was false in that "he checks the box that the

PLAINTIFF 'admitted to the driving the vehicle.'" ECF No. 1 at 10. Plaintiff alleges that in fact he denied driving the vehicle. Id. The complaint also points to "multiple discrepancies" between the reports of Officer Lowry and Officer Hernandez, specifically as to which officer first arrived at the scene, which first approached the car, whether they identified the owner of the vehicle before or after contacting plaintiff, and details of how plaintiff was lying in the car and at what point plaintiff was placed under arrest. Id. at 10-11. Plaintiff alleges that the reports were "written willfully and wantonly." Id. at 9, 18-23.

Based on these facts, the complaint presents the following putative claims, all pursuant to 42 U.S.C. § 1983: (1) unlawful search and seizure; (2) false arrest, (3) illegal detention, (4) excessive force/battery, (5) malicious prosecution, (6) right to due process, and (7) respondeat superior. Id. at 7.

**II. Plaintiff's Motion to Remand (ECF No. 4)**

A. Standards

A defendant sued in state court may remove to the appropriate federal district court any civil action over which the district courts have original jurisdiction. See 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The general rule governing removal of actions from the state court to federal court is that for a district court to have federal question removal jurisdiction, a federal cause of action must appear on the face of the complaint." Felton v. Unisource Corp., 940 F.2d 503, 506 (9th Cir. 1991) (citations omitted). "Under § 1447(c), the district court must remand '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]'" Smith v. Mylan Inc., 761 F.3d 1042, 1044 (9th Cir. 2014).

B. Analysis

Because plaintiff's complaint contains multiple federal constitutional claims, and states on its face that all claims are asserted under § 1983, federal question jurisdiction clearly appears on the face of the complaint. Accordingly, removal was proper and this court has federal question jurisdiction under § 1331. Where an action was properly removed and the federal court has original jurisdiction over the claims, the federal court has no authority to remand the case.

1  Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).

2  Plaintiff relies on the doctrine of *forum non conveniens* and argues that the balance of convenience factors weigh in favor of a state forum. He contends that his case is primarily based on state law, and that remanding the case would allow the state court to apply a recent ruling of the California Supreme Court in the case Leon v. Riverside. ECF No. 4 at 2. As noted above, however, plaintiff's expressly alleged causes of action are all based in federal law. To the extent if any that he attempts to assert supplemental state law claims, or that state law is relevant to the analysis of his federal claims, this court can and will apply that law.[1] See Lehman Brothers v. Schein, 416 U. S. 386, 391(1974) (our system of "cooperative judicial federalism" presumes federal and state courts alike are competent to apply federal and state law).

In any event, remand of a removed case turns exclusively on the presence or absence of federal court jurisdiction. Destfino, 630 F.3d at 958. *Forum non conveniens* is a venue doctrine, not a jurisdictional principle. It is a common-law doctrine "under which a federal district court may *dismiss* an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007) (emphasis added). The doctrine applies almost exclusively in instances where the alternative forum is abroad, but is applicable "in rare instances where a state or territorial court serves litigational convenience best." Id. *Forum non conveniens* is an "exceptional tool to be employed sparingly." Bos. Telecommunications Grp., Inc. v. Wood, 588 F.3d 1201, 1206 (9th Cir. 2009) (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002)).

Plaintiff does not seek dismissal of his lawsuit, and remand of a removed case is not available on the basis of *forum non conveniens*. The events giving rise to plaintiff's claims all occurred within the Eastern District of California and defendants are resident in the district, so venue is proper in this court. See 28 U.S.C. § 1391(b). For all these reasons, the undersigned recommends the motion (ECF No. 4) be DENIED.

---

[1] In any event, plaintiff describes Leon as involving adjudication of a Fourth Amendment claim rather than any state law issue. ECF No. 4 at 4.

**III.      Plaintiff's Motion to Strike the Answer (ECF No. 12)**

A. Standards

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are disfavored an[d] infrequently granted. A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Contreras, ex rel. Contreras v. County of Glenn, 725 F. Supp.2d 1157, 1159 (E.D. Cal. 2010) (internal citations omitted). "Courts will not grant motions to strike unless convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Novick v. UNUM Life Ins. Co. of America, 570 F. Supp. 2d 1207, 1208 (C.D. Cal. 2008) (internal quotations omitted). "When ruling on a motion to strike, courts must view the pleading under attack in the light most favorable to the pleader." Id.

B. Analysis

Plaintiff moves to strike defendants' Answer (ECF No. 5) on the grounds that it is "dishonest and a sham." ECF No. 12 at 1. He identifies various admissions and denials contained in the Answer with which he disagrees, and as to which he has contrary evidence or can identify inconsistencies in the officers' reports. Id. at 2. Plaintiff argues on that basis that the Answer should be stricken as "misleading, vague, and filed in bad faith." Id. at 3.

Plaintiff misunderstands the function of the Answer, which is to identify defendants' position regarding plaintiff's factual allegations and the defenses that they intend to pursue. See Rule 8(b), Fed. R. Civ. P.  The court has reviewed the Answer, ECF No. 5, and finds it is fully compliant with Rule 8(b) and contains no facially insufficient defense.  Plaintiff has identified no redundant, immaterial, impertinent, or scandalous matter.  Taken together, the Complaint and the Answer serve their intended functions of identifying the facts and issues to be explored in discovery and motion practice.  The motion to strike (ECF No. 12) will be DENIED.

////

////

**IV.     Defendants' Motion for Judgment on the Pleadings (ECF No. 7)**

A. Standards

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In a Rule 12(c) motion, the court "assume[s] that the facts that [plaintiff] alleges are true." Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) (citing United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011)). "'Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (alteration in original) (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)).

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." Id. (citation and internal quotation marks omitted). Under that standard, to survive dismissal, the complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (alternation in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Although the court must accept as true the allegations of the complaint, Jackson, 749 F.3d at 763, the court need not accept legal conclusions "cast in the form of factual allegations," Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted).

7

B. Analysis

    1. Officers Medina and Brooks Should be Dismissed

Defendants seek dismissal with prejudice of Officers Medina and Brooks. These officers are named as defendants in the complaint, ECF No. 1 at 7, but there are no factual allegations regarding their conduct.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). The statute requires that there be an actual connection or link between the actions of the defendants and the violation of rights alleged to have been suffered by plaintiff. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. " Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44 (citation omitted)

As noted above, Officers Medina and Brooks are not mentioned at all in the body of the complaint. ECF No. 1 at 7-14. Officer Brooks' presence at the scene of plaintiff's arrest is noted in one of the attached police reports, id. at 18, but neither Medina nor Brooks is alleged to have participated in any of the acts that plaintiff contends violated his rights. Accordingly, the complaint does not contain any facts that create a "specific causal link" between either Medina or Brooks and the alleged constitutional violations. The complaint as pleaded thus fails to state a claim for relief against either Medina or Brooks, and the question becomes the appropriateness of leave to amend.

Although leave to amend is generally to be granted with liberality, particularly when a

1  plaintiff is pro se, the court need not allow amendments that would be futile. <u>Hartmann v. CDCR</u>,
2  707 F.3d 1114, 1130 (9th Cir. 2013); <u>see also</u> <u>Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.</u>
3  <u>Bureau</u>, 701 F.2d 1276, 1293 (9th Cir. 1983).  At hearing on the motions, the undersigned asked
4  plaintiff about the roles of Medina and Brooks in the events described in the complaint.  Plaintiff
5  explained that Medina and Brooks were on the scene but did not participate in the interaction with
6  plaintiff.  He seeks to sue them because they could have acted to prevent unconstitutional acts,
7  but they did nothing.
8        Amendment of the claims as to Medina and Brooks would be futile.  First, as a matter of
9  law, officers cannot be held liable simply for being bystanders to unlawful acts committed by
10 fellow officers.  <u>Chuman v. Wright</u>, 76 F.3d 292, 295 (9th Cir. 1996).  More fundamentally, as
11 the court now discusses, the acts of Officers Lowry and Hernandez did not amount to
12 constitutional violations as a matter of law.  Accordingly, even if Medina and Brooks had an
13 obligation to prevent constitutional violations, such a duty would not have arisen on the facts of
14 this case.
15       2.   <u>All Claims Arising from Plaintiff's Detention and Arrest Should Be Dismissed</u>
16       Although the complaint fails to clearly identify which facts are intended to support which
17 alleged constitutional violations, plaintiff plainly alleges that he was illegally removed from the
18 vehicle and ordered to the ground, and that he was arrested without probable cause.  ECF No. 1 at
19 8 ("PLAINTIFF awoke from commands… that PLAINTIFF was under arrest and to exist [sic]
20 the vehicle with his hands up and lay face down."), 9.  Plaintiff appears to believe that there
21 cannot have been probable cause to detain or arrest him because no officer personally observed a
22 crime being committed.  <u>Id.</u> at 8 (Officer Hernandez "had not seen any crime committed and
23 lacked reasonable suspicion and probable cause.")  This is plainly a reference to the fact that no
24 officer had observed plaintiff driving the car.  <u>Id.</u> (emphasizing that arrest was unconstitutional
25 because plaintiff was a "mere passenger").
26       The Fourth Amendment protects against unreasonable searches and seizures.  <u>United</u>
27 <u>States v. Cortez</u>, 449 U.S. 411, 417 (1981).  "As the text makes clear, the ultimate touchstone of
28 the Fourth Amendment is 'reasonableness.'"  <u>Riley v. California</u>, 573 U.S. 373, 381 (2014)

(citation omitted). To temporarily detain an individual without a warrant, an officer must have reasonable suspicion that the person stopped is engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417–18 (1981). The Supreme Court has squarely held that an officer has reasonable suspicion where they receive a 911 call from a person reporting behavior that, "viewed from the standpoint of an objectively reasonable police officer, amount[s] to reasonable suspicion" of drunk driving. Navarette v. California, 572 U.S. 393, 402 (2014). Here, a 911 caller had reported an "erratic driver" who was "last seen stripping off his clothing in the middle of the intersection" and driving off in a yellow Dodge Ram truck. ECF No. 1 at 22. That reported conduct reasonably supported a suspicion of impaired driving. Officers found plaintiff in a yellow Dodge Ram truck in the vicinity; he was the sole occupant of the truck and was wearing only his underwear. These facts supported a reasonable suspicion that plaintiff was the erratic driver described by the 911 caller. Plaintiff does not and cannot dispute the fact of the 911 caller's report, which establishes reasonable suspicion as a matter of law. See Navarette, supra; see also Adams v. Williams, 407 U.S. 143, 147 (1972).[2] Accordingly, to the extent if any that plaintiff was detained for investigative purposes prior to being placed under arrest, there was no constitutional violation.

As for plaintiff's arrest, a warrantless arrest is valid if based on probable cause. United States v. Bernard, 623 F.2d 551, 558-59 (9th Cir. 1979). On the other hand, "[a]rrest by police officers without probable cause violates the Fourth Amendment's guarantee of security from unreasonable searches and seizures, giving rise to a claim for false arrest under § 1983." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992). Probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Call v. Badgley, 254 F.Supp.3d 1051, 1066 (N.D. Cal. 2017). The circumstances known to the arresting

---

[2] In Anderson, as here, reasonable suspicion of DUI was based on a tip from an eyewitness whose report included multiple indicia of reliability: the witness was willing to identify himself and to be involved in further investigation, provided an accurate description of the vehicle, witnessed the dangerous driving and was concerned enough to call the police and then follow the driver.

10

officers were not limited to the 911 call itself. The responding officers noted that plaintiff "displayed obvious signs of intoxication," ECF No. 1 at 22, and plaintiff repeatedly admitted being drunk. In the complaint and at hearing on the motion, plaintiff freely acknowledged that he was drunk when arrested but denied having been the driver of the car. The 911 caller, however, was brought to the scene and positively identified plaintiff as the driver. Id. Under the totality of the circumstances known to the arresting officers at the time, there was a fair probability that plaintiff had driven the truck.

The arrest was supported by probable cause even if the court accepts plaintiff's allegation that he was told he was under arrest at the same time he was ordered out of his truck,[3] and disregards the evidence of DUI developed after that point. The 911 caller who witnessed the erratic driving had specified that the driver of the truck was a "Hispanic male adult," ECF No. 1 at 18, and plaintiff fit that description. Plaintiff's state of undress and the make and color of the vehicle he was in were also consistent with the details of the 911 report. The skid mark and crooked parking of the vehicle where it had come to a stop were indicative of impaired driving. The fact that plaintiff was the only occupant of the truck indicated a fair probability that he had been driving it. This is enough to establish probable cause. The fact that plaintiff was ultimately acquitted does not mean that the police acted illegally in arresting him.

For all these reasons, Claims Two (false arrest) and Three (illegal detention) should be dismissed with prejudice. Claim One (unlawful search and seizure) should also be dismissed to the extent it is based on plaintiff's detention and/or arrest.

3. All Claims Arising from the Blood Draw Should be Dismissed

Plaintiff alleges that defendants lacked probable cause for the "search and seizure of his body fluids." ECF No. 1 at 9. Accordingly, the court construes Claim One (unlawful search and seizure) to include a Fourth Amendment challenge to the reasonableness of the blood draw that followed his arrest. He also alleges that he was a "victim of excessive force" because he was subjected to a blood draw. Id. at 11. Plaintiff's excessive force claim appears to be solely related

---

[3] Officer Lowry's report indicates that plaintiff was placed under arrest following subsequent questioning and plaintiff's refusal to submit to a breathalyzer. ECF No. 1 at 19.

to the blood draw.  Id.; see also ECF No. 14 at 5.[4]

California Vehicle Code § 23158(a) provides that certain licensed or certified individuals acting at the request of a peace officer may withdraw blood from persons suspected of driving under the influence of alcohol for the purpose of determining alcohol content.  The involuntary drawing of blood to test for alcohol or drug use constitutes a search that is governed by the Fourth Amendment.  Schmerber v. California, 384 U.S. 757, 770 (1966).  "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned."  Id.  The exhibits to the complaint establish that the blood draw at issue here was in fact authorized by a warrant issued by Judge Lucaccini of San Juaquin County.  ECF No. 1 at 19.  The issuance of a warrant satisfies the requirements of the Fourth Amendment, and defeats the unlawful search claim as a matter of law.  Plaintiff makes no argument that the warrant was defective in any way.

Fourth Amendment excessive force claims are analyzed under an objective reasonableness standard.  Espinosa v. City & County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010).  The complaint makes no allegation that the blood draw was performed in an unreasonable manner.[5] At the hearing, plaintiff confirmed that his theory of liability rests on the proposition that the involuntary blood draw inherently constituted an excessive use of force.  He contends that his admission of drunkenness made blood alcohol evidence unnecessary.  The legality of the blood draw does not depend on plaintiff's assessment of its necessity, however.  Because the search was authorized by a warrant, and no defendant is alleged to have used excessive force in the course of obtaining the blood sample, plaintiff cannot prevail on this issue as a matter of law.

////

////

////

---

[4] At hearing on the motion, plaintiff confirmed that he is not alleging any violence was involved in his arrest.  Because he believes that the arrest was unlawful, he maintains that all physical contact with his person including the application of handcuffs constituted "excessive force."  This theory provides no basis for amendment, because the arrest was permissible for the reasons already explained.

[5] In any event, plaintiff's blood was drawn by medical personnel and not by any defendant.

Accordingly, the motion should be granted as to Claim One (unreasonable search and seizure)—to the extent it is predicated on the blood draw—and Claim Four (excessive force).[6]

### 4. The Malicious Prosecution Claim Should be Dismissed

Plaintiff alleges he was maliciously prosecuted by Officer Lowry, appearing to argue that Lowry's alleged falsified police report amounts to malicious prosecution. ECF No 1 at 9, 11. The complaint as a whole also suggests that plaintiff's prosecution, like his arrest, lacked probable cause.

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (citation omitted). However, malicious prosecution, by itself, does not constitute a constitutional violation. Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995). To succeed on a § 1983 malicious prosecution claim, plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Id. Here, plaintiff is not asserting that he was wrongfully prosecuted because of his membership in a protected class or because of his protected speech or for any other reason constituting a denial of a constitutional right. Accordingly, he cannot maintain a constitutional claim under § 1983 for malicious prosecution.

To the extent if any that plaintiff intends to present a parallel malicious prosecution claim under California law, the elements of such a claim are (1) the initiation of criminal prosecution, (2) malicious motivation, and (3) lack of probable cause. Usher v. City of Los Angeles, 828 F.2d 556, 561–62 (9th Cir. 1987) (citing Singleton v. Perry, 45 Cal.2d 489, 494, (1955)). For the same reasons explained above regarding plaintiff's arrest, probable cause appears on the face of the complaint and its attachments and thus defeats the claim. Moreover, because none of plaintiff's

---

[6] To the extent if any that plaintiff intends to present a pendent state law claim for battery in conjunction with his Fourth Amendment excessive force claim, see ECF No. 1 at 7, that claim fails for the same reasons. Moreover, even if plaintiff had proffered facts that might support a state law battery claim, supplemental jurisdiction should not be exercised over such a claim because all of plaintiff's federal claims fail as a matter of law. See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994).

federal claims may proceed, this court should decline to exercise supplemental jurisdiction over any putative state claw claims. See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994).

For these reasons, the motion should be granted as to Claim Five (malicious prosecution).

### 5. The Due Process Claim Should be Dismissed

Plaintiff included "right to due process" as a claim in the caption of his compliant, ECF No. 1 at 7, but the pleading does not indicate the factual basis for such a claim.[7] Plaintiff explained at the hearing that his due process claim is based on the officers' alleged fabrication of portions of their police reports. Although such a claim is not clearly pleaded, the court addresses the argument here as it impacts the potential for granting leave to amend.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The due process clause protects two distinct but related rights: procedural due process and substantive due process. Albright v. Oliver, 510 U.S. 266, 272 (1994). "To show a procedural Due Process violation, [Plaintiff] must prove two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." United States v. 101 Houseco, LLC, 22 F.4th 843 (9th Cir. 2022) (internal quotation marks and citation omitted). To show a substantive Due Process violation, the government must have engaged in conduct that "shock[ed] the conscience ...." George v. Edholm, 752 F.3d 1206, 1217 (9th Cir. 2014) (quoting Rochin v. California, 342 U.S. 165 (1952)).

Plaintiff's putative due process claim is based entirely on his assertion that the officer defendants put false information in their police reports. Even assuming that the officers filed false reports, plaintiff would have no viable claim for a violation of due process. The due process clause simply "does not contain any language that grants a broad right to be free from false accusations, but [rather] guarantees certain procedural protections to defend against false

---

[7] Malicious prosecution, without more, does not violate due process as a matter of law. Freeman, 68 F.3d at 1189.

14

accusations." Hernandez v. Holt, 2021 WL 809389, at *5; 2021 U.S. Dist. LEXIS 40082, *12 (E.D. Cal. March 3, 2021). Plaintiff received the benefit of the procedural protections due him as a criminal defendant, and he apparently defeated the allegedly false accusations. That outcome does not, however, entitle him to damages in a civil lawsuit.

Accordingly, defendants' motion should be granted as to Claim 6 (due process).

### 6. The Municipal Liability Claim Should be Dismissed

Plaintiff brings a "respondeat superior" claim against the City of Manteca alleging it "failed to train, supervise, or hire employees" and has a "pattern and history a unwritten policy that is a custom" that resulted in violations of plaintiff's civil rights. ECF No. 1 at 12. There is no "respondeat superior" liability under § 1983, and local governments therefore "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978). Though "municipalities and other local government units ... [are] among those persons to whom § 1983 applies," Monell, 436 U.S. at 690, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation,'" City of Canton v. Harris, 489 U.S. 378, 389 (1989) (alteration in original) (quoting Monell, 436 U.S. at 694 and Polk County v. Dodson, 454 U.S. 312, 326 (1981)).

To state a cognizable claim under Monell, a plaintiff must plead "(1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiffs constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). Plaintiff's allegations must demonstrate "a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." Canton, 489 U.S. at 385.

For the reasons already explained, nothing about the circumstances of plaintiff's arrest and prosecution rises to the level of a constitutional violation. Because plaintiff cannot, as a matter of law, establish the first element of Monell liability—that he was deprived a constitutional right—this claim necessarily fails. See Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir.

2006).  Moreover, plaintiff has not identified any specific City policy, training protocol, or other municipal action that is allegedly unconstitutional.  Blanket or vague assertions that an unconstitutional policy exists will not suffice because such allegations amount to no more than a formulaic recitation of the elements of the cause of action.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).[8]

The motion should be granted as to Claim Seven.

7. Leave to Amend is Not Appropriate

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).  Here, amendment would be futile.  At the core of plaintiff's complaint lie the contentions that (1) his detention and arrest for DUI were unconstitutional, and (2) his blood could not constitutionally be drawn over his objection.  Both of these contentions fail as a matter of law, and no amendment to add factual detail or alternative legal theories could change that.  For the reasons explained above, each of plaintiff's putative federal claims is legally foreclosed, and plaintiff has identified no additional facts that could change the analysis as to any claim.  Amendment would therefore be futile and should not be permitted.  See Hartmann, 707 F.3d at 1130.

V. Pro Se Plaintiff's Summary

The magistrate judge is denying your motion to strike because your disagreement with defendants about the facts is not a reason to strike a pleading.  The magistrate judge is recommending that your motion to remand be denied, because this court has jurisdiction to hear your case and it was properly removed.  The magistrate judge is recommending that defendants' motion for judgment on the pleadings be granted and this case dismissed, because it is clear that what happened when you were arrested did not violate the Constitution.  You have 21 days to file any objections to this recommendation.

---

[8] At hearing, it became clear that plaintiff is unaware of any specific City policy or practice that he can causally link to the alleged deprivations of his rights.  Even if it were otherwise, amendment could not cure the Monell claim because the predicate constitutional claims fail as a matter of law.

## VI. Conclusion

Accordingly, it is ORDERED that plaintiff's motion to strike (ECF No. 12) is DENIED.

It is further RECOMMENDED that:

1. Plaintiff's motion to remand (ECF No. 4) be DENIED;
2. Defendants' motion for judgment on the pleadings (ECF No. 7) be GRANTED; and
3. This case be DISMISSED WITH PREJUDICE.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: January 16, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE